UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL SCOTT VOGEL,<br><br>       Plaintiff,<br><br>  – against –<br><br>TAKEONE NETWORK CORP., *d/b/a* WRAPBOOK, PATRICK ALI JAVID, NAYSAWN NAJI, HESHAM EL-NAHHAS, *and* CAMERON WOODWARD*, individually and in their capacity as Co-Founders of WRAPBOOK*,<br><br>       Defendants. | **OPINION & ORDER**<br><br>22-cv-3991 (ER) |

Ramos, D.J.:

  Michael Scott Vogel brings this action against TakeOne Network Corp., d/b/a Wrapbook ("Wrapbook"), and its founders, Patrick Ali Javid, Naysawn Naji, Hesham El-Nahhas, and Cameron Woodward, (collectively, "Defendants") for allegedly stealing Vogel's business idea. Doc. 31 (First Amended Complaint ("FAC")). He brings claims for misappropriation of trade secrets, breach of actual or implied contract, breach of fiduciary duty, misappropriation of a business idea, breach of actual or implied covenant of good faith and fair dealing, unjust enrichment, unfair competition, promissory estoppel, aiding and abetting breach of fiduciary duty, and usurpation of a joint venture opportunity. *Id.* ¶¶ 97–166.

  Before the Court is Defendants' motion to dismiss the FAC. Doc. 34. For the reasons set forth below, Defendants' motion is denied as to Vogel's unjust enrichment claim but granted as to all other counts.

I.  BACKGROUND

  A. Factual Background

  Vogel is a producer with significant experience in television, commercial, and other forms of entertainment and media production. FAC ¶ 1. Naji is a software

programmer with experience in financial technology ("fintech") startups. *Id.* ¶ 5. In March 2017, Vogel met with Naji to combine their respective expertise and collaborate on Vogel's idea to create an "all-in-one computer system to manage the complexities of entertainment and media production." *Id.* ¶¶ 2, 4–5, 35–37. The system, which Vogel named Tradekraft, was to be an electronic production or "wrap" book: a detailed, self-contained, and comprehensive specification of every aspect of production that was also able to adapt in real time to changes during the production. *Id.* ¶ 48. As part of Vogel's objective to make Tradekraft an end-to-end system to manage the production process and facilitate production briefs, one of its features was a portable payroll profile to manage payroll and expenses and charge processing fees as a percentage of transaction fees. *Id.* ¶ 39.

After a "Go-or-No-Go Period" during which Naji confidentially evaluated Vogel's Tradekraft plans to determine whether he wanted to join the venture, Naji committed to Tradekraft in April 2017 in exchange for an interest in future Tradekraft revenues and proceeds. *Id.* ¶¶ 6, 50. Naji agreed to develop the code for a minimal viable product version of Tradekraft ("the MVP") based on Vogel's plans. *Id.* ¶¶ 45–47. But, because he needed help with the programming necessary for the MVP, in May 2017, Naji sought Vogel's permission to have El-Nahhas join the partnership and assist with the coding. *Id.* ¶¶ 52–53. Vogel agreed to add El-Nahhas to the partnership but proposed that El-Nahhas' equity be a percentage of Naji's, without reducing Vogel's equity in the partnership, since El-Nahhas' role would be assisting Naji. *Id.* ¶ 54.

El-Nahhas thereafter joined Tradekraft. *Id.* ¶ 55. The complaint is contradictory, however, as to whether Vogel, Naji, and El-Nahhas ever determined the breakdown of their respective shares of equity and responsibility for expenses in the alleged Tradekraft partnership. On the one hand, it alleges that, in June 2017, the three discussed retaining an additional software programmer for a Tradekraft mobile app and, at that time, formalized that the equity and expenses (including with respect to hiring a mobile app

software programmer) would be split one-third each. *Id.* ¶¶ 63–66. But that ratio was subject to change. *Id.* ¶ 65 n.2. And, on the other hand, it also states that during the same June 2017 period, Naji and Vogel prepared a document in which they merely included proposed terms for a partnership agreement without reducing the "proposed terms" to a signed, executed written contract ("the Proposed Terms Document"). *Id.* ¶ 43; *see also id.* ¶ 7 (stating that there was no "specific written partnership agreement," only an "oral[] agree[ment] to form a partnership in order to develop Tradekraft and pursue business opportunities arising in relation thereto"). Likewise, the complaint alleges that, by late 2017 and early 2018, Vogel "had not reached . . . any agreement on the amount and source of El-Nahhas's equity compensation." *Id.* ¶ 78. Ultimately, Vogel, Naji, and El-Nahhas did not hire the additional software programmer or decide how they would split any other expenses. *See id.* ¶¶ 65 n.2, 66.

Nevertheless, the three collaborated on a platform to develop Tradekraft and its software code, detailed bug lists, documents outlining implementation plans for various features and weekly task lists, and a "Kitchen Sink Document" of Vogel's ideas for Tradekraft (including those for onboarding, payroll, and insurance). *Id.* ¶¶ 56–59. Vogel alleges all the documents were kept confidential, and the three attempted to preserve the secrecy of their work product, including by using password protection and limiting those with access to the documents. *Id.* ¶¶ 59, 62.

In late 2017, Naji proposed also adding Woodward to the Tradekraft partnership to help plan the payroll and insurance functionalities, but Vogel was hesitant to include Woodward because Woodward was not a software programmer. *Id.* ¶¶ 70–78. Vogel became "concerned about the implications of Naji's request to bring Woodward into Tradekraft" and asked for access to the Tradekraft code. *Id.* ¶ 77. Naji refused. *Id.*

And, in January 2018, Naji met with Vogel and told him that he and El-Nahhas no longer wished to continue the partnership with Vogel. *Id.* ¶ 79. At that point, Naji and El-Nahhas had not completed the MVP. *Id.* ¶ 81. Further, on January 16, 2018, Naji

3

emailed Vogel and El-Nahhas, proposing dissolving the partnership and delivering the source code to all three partners, each of whom would have a fully paid perpetual license to the code ("the Dissolution Email"). *Id.* ¶ 83. When Vogel rejected that proposal, Naji and El-Nahhas terminated Vogel's access to the Tradekraft coding platform and the documents that the partnership had drafted for Tradekraft. *Id.* ¶ 84. Vogel never heard further from Naji or El-Nahhas. *Id.* ¶ 86.

In 2019, Naji, El-Nahhas, and Woodward co-founded Wrapbook, a software program to manage various aspects of entertainment and media production. *Id.* ¶¶ 19, 87. Wrapbook includes several features similar to those which had been planned for Tradekraft, including "onboarding, organization, processing, storage, and reporting of project, crew, and vendor payroll, expense, and tax information and payments." *Id.* ¶ 88. Javid, Wrapbook's chief executive officer, has publicly described Wrapbook as "a vertical fintech platform for employers to onboard, pay, and insure project workforces," including with employee profiles that are portable between employers. *Id.* ¶¶ 89–90. In August 2020, Wrapbook secured $3.6 million in seed funding, and, as of September 2022, it had funding of more than $100 million and an equity valuation of approximately $1 billion. *Id.* ¶¶ 87, 95.

Vogel alleges that, before Naji and El-Nahhas terminated the partnership, they had already approached Woodward and Javid to use Vogel's Tradekraft ideas to develop Wrapbook and cut Vogel out. *Id.* ¶¶ 80–82, 87.

### B. Procedural History

Vogel filed the instant suit on May 16, 2022. Doc. 1. Defendants moved to dismiss on September 1, 2022. Doc. 22. On consent, Vogel sought leave to file an amended complaint on September 20, 2022 (Doc. 29), which the Court granted on September 21, 2022 (Doc. 30). Vogel filed the FAC the same day. Doc. 31. Defendants filed the instant motion to dismiss the FAC, in its entirety, on October 21, 2022. Doc. 34.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *Doe*

*v. N.Y. Univ.*, No. 20-cv-1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

## III. DISCUSSION

### A. The Court Will Consider the Dissolution Email, But Not the Other Exhibits Defendants Proffer as Integral to the Complaint

As a preliminary matter, Defendants ask the Court to consider four extrinsic documents submitted in support of their motion to dismiss: the Kitchen Sink Document, the Proposed Terms Document, the Dissolution Email, and a purported transcript of a January 16, 2018 call between Vogel and Naji that Vogel "surreptitiously recorded" ("the Call Transcript"). Doc. 36 at 13–14. Defendants argue that these documents are "integral to numerous allegations," and Vogel effectively incorporated them by reference in his complaint, so the Court may consider them in deciding the motion to dismiss. *Id.* Though he makes no arguments disputing the authenticity or accuracy of any of the documents, Vogel opposes on the basis that considering documents extraneous to the FAC would be improper in the context of a motion to dismiss. Doc. 40 at 11–12.

In adjudicating a motion to dismiss, a court may consider only the complaint, exhibits to the complaint, any statements or documents incorporated in it by reference, and documents integral to it. *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)). "To be incorporated by reference, the complaint must make a clear, definite[,] and substantial reference to the documents[.]" *Bill Diodato Photography L.L.C. v. Avon Products, Inc.*, No. 12-cv-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) (citation omitted). And, "[t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Id.* (alteration in original) (citation omitted). Thus, where a document is partially quoted in a complaint, the Court may generally consider its full text. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir. 1996). Further, "a

6

plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original) (citation omitted). Finally, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citations omitted).

The Second Circuit has "largely" limited the scope of "integral" documents to "written instruments"—*i.e.*, those legal documents that, in writing, define a party's "rights, duties, entitlements, or liabilities"—as compared to evidence that merely makes a claim more or less factually likely. *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (citations omitted). But communications whose legal effect forms the basis of a cause of action may also be considered on a motion to dismiss. *See, e.g. DiFolco*, 622 F.3d at 112 (emails alleged to repudiate a contract); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (documents alleged to contain the misrepresentations or nondisclosures giving rise to a fraud claim)*; Harris v. New York*, No. 20-cv-8827 (LAP), 2022 U.S. Dist. LEXIS 48043, at *34–35 (S.D.N.Y. Mar. 17, 2022) (text messages alleged to constitute harassment and discrimination).

Here, the Court will not consider the Kitchen Sink Document, the Proposed Terms Document, or the Call Transcript in deciding the instant motion to dismiss; but it finds that the Dissolution Email was incorporated by reference and integral to the FAC. First, Vogel mentions the *existence* of the Kitchen Sink and Proposed Terms Documents in the FAC, but he neither quotes directly from them nor relies upon their *contents* in framing the FAC. And, because "mere notice or possession [of the documents] is not enough," without reliance upon the documents' "terms and effect," neither document is appropriate for the Court to consider on a motion to dismiss. *See Chambers*, 282 F.3d at 153; s*ee also Bill Diodato Photography*, 2012 WL 4335164, at *3. Moreover, neither document is

7

legally significant in the same way as a document that repudiates a contract or perpetrates fraud or harassment. *See DiFolco*, 622 F.3d at 112; *Roth*, 489 F.3d at 509; *Harris*, 2022 U.S. Dist. LEXIS 48043, at *34–35. Further, Vogel makes no reference whatsoever in the complaint to a January 16, 2018 call (as opposed to the in-person meeting and email); the Call Transcript accordingly cannot be said to be either incorporated by reference in, or integral to, the FAC. *See Bill Diodato Photography*, 2012 WL 4335164, at *3.

In comparison, however, Vogel *does* quote the Dissolution Email in the FAC. FAC ¶ 83. And, while it is not a *per se* "written instrument" within the meaning of *Lynch*, it is a communication with legal effect insofar as Vogel alleges that Naji and El-Nahhas wrongfully dissolved the partnership to steal Vogel's ideas and engage in self-dealing. *See DiFolco*, 622 F.3d at 112. Accordingly, the Dissolution Email is integral to the FAC, and the Court may properly consider it in adjudicating the instant motion to dismiss. *See San Leandro Emergency Med. Grp. Profit Sharing Plan*, 75 F.3d at 808–09.

### B. Except for the Unjust Enrichment Claim, All of Vogel's Claims are Dismissed

Defendants move to dismiss each of Vogel's claims—misappropriation of trade secrets, breach of actual or implied contract, breach of fiduciary duty, misappropriation of a business idea, breach of actual or implied covenant of good faith and fair dealing, unjust enrichment, unfair competition, promissory estoppel, aiding and abetting breach of fiduciary duty, and usurpation of a joint venture opportunity—under Rule 12(b)(6). The Court grants Defendants' motion with respect to each of Vogel's claims except his claim for unjust enrichment.

1. *Breach of Actual or Implied Contract & Breach of Actual or Implied Covenant of Good Faith and Fair Dealing (Counts 2 and 5)*

Vogel alleges that he, Naji, and El-Nahhas entered into an oral partnership agreement[1] to develop Tradekraft, but Naji and El-Nahhas breached the contract and the concomitant covenant of good faith and fair dealing when they locked Vogel out of the Tradekraft work product and used that work product to develop Wrapbook without Vogel. FAC ¶¶ 100–14, 131–38; Doc. 40 at 14–16. Defendants argue Vogel failed to sufficiently plead that a partnership agreement existed because Vogel did not plead a definite agreement to share profits and losses, and both claims accordingly fail. Doc. 36 at 15–20.

To state a claim for breach of contract, a plaintiff must plead that an agreement exists, he adequately performed it, defendants breached it, and he suffered damages therefrom. *Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 347 (S.D.N.Y. 2020) (citing *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). Here, Vogel alleges he, Naji, and El-Nahhas entered into a partnership agreement.[2] FAC ¶¶ 107–08. To plead the existence of a partnership, a plaintiff must allege: (1) the sharing of profits and losses; (2) joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge; and (4) the intent to form a partnership. *Ardis Health, LLC v. Nankivell*, No. 11-cv-5013 (NRB), 2012 U.S. Dist. LEXIS 154839, at *15 (S.D.N.Y. Oct. 23, 2012) (citing *Anwar v. Fairfield*

---

[1] In his opposition to Defendants' motion to dismiss, Vogel also argues that Defendants breached their confidentiality agreement. Doc. 40 at 21. But Vogel's complaint premises the breach of contract claim only on the partnership agreement. FAC ¶¶ 108–10. Accordingly, the breach of contract claim is properly before the Court *only* with respect to the partnership agreement, and the Court will not consider whether Vogel stated a claim for breach of the confidentiality agreement. *See Calltrol Corp. v. Loxysoft AB*, No. 18-cv- 9026 (NSR), 2021 U.S. Dist. LEXIS 241125, at *4 n.2 (S.D.N.Y. Dec. 16, 2021) (rejecting plaintiff's attempts oppose a motion to dismiss on the basis that its breach of contract claim arose from on a different agreement than that alleged in the complaint because a "[p]laintiff cannot amend its complaint or raise new claims in its opposition to a motion to dismiss" (citations omitted)).

[2] It is undisputed that the parties did not execute a written partnership agreement, and Vogel instead contends that it was either an oral or implied partnership agreement. FAC ¶¶ 7, 107–08. "[A] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct." *Shih v. Petal Card, Inc.*, No. 18-cv-5495 (JFK), 2020 U.S. Dist. LEXIS 174466, at *25 (S.D.N.Y. Sept. 23, 2020) (quoting *Jemzura v. Jemzura*, 330 N.E.2d 414, 420 (N.Y. 1975)).

*Greenwich, Ltd.*, 728 F. Supp. 2d 372, 404 (S.D.N.Y. 2010)).  An agreement to share losses is an "indispensable" element of a partnership, absent which no partnership can exist.  *Id.* (quoting *Steinbeck v. Gerosa*, 151 N.E.2d 170, 178 (N.Y. 1958)); *see also Grasso v. Donnelly-Schoffstall*, No. 21-1021, 2022 U.S. App. LEXIS 6331, at *3 (2d Cir. Mar. 11, 2022) (affirming dismissal of plaintiff's breach of contract claim where plaintiff contradictorily pled if, and in what amount, the parties were to share losses and profits because the lack of definiteness as to those terms precluded the existence of an enforceable partnership or joint venture agreement).

  Here, Vogel is inconsistent as to whether he, Naji, and El-Nahhas ever determined whether and how they would share profits and losses.  The FAC first states that the three agreed to split equity and expenses one-third each when they contemplated hiring an additional software programmer in June 2017; but it then states that the ratio was subject to change, these were merely proposed terms, and, by late 2017, the three had *not* reached an agreement with respect at least to El-Nahhas' equity.  FAC ¶¶ 43, 63–66, 65 n.2, 78.  Moreover, the parties never in fact split any expenses, as they never hired another software programmer (FAC ¶ 66), and the Dissolution Email shows all other expenses were borne primarily by Naji with some small expenditures by El-Nahhas (Doc. 37-3 at 2).  Further, all Vogel's allegations only go to sharing *expenses*, not *losses*, as is required to establish a partnership.  *See Fisher v. Tice*, 692 F. App'x 54, 57 (2d Cir. 2017) (holding that merely agreeing to share expenses is insufficient to agree to share losses).  Given the contradictory allegations as to whether an agreement existed to share expenses—let alone losses—and in the absence of a course of conduct sharing losses, Vogel has not adequately pled that the parties agreed to share losses.  *See Ariel (U.K.) Ltd. v. Reuters Grp. PLC*, No. 05-cv-9646 (JFK), 2006 U.S. Dist. LEXIS 79319, at *14–15 (S.D.N.Y. Oct. 31, 2006) ("[W]here allegations set out in the complaint are contradicted by other matters asserted . . . , the court is not obliged to credit the allegations in the complaint."); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001)

(holding "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself or by documents upon which its pleadings rely" and collecting cases); *American Centennial Ins. Co. v. Seguros La Republica, S.A.*, No. 91-cv-1235, 1996 U.S. Dist. LEXIS 7729, at*50 (S.D.N.Y. June 5, 1996) ("Allegations are not well pleaded if they are 'made indefinite or erroneous by other allegations in the same complaint . . . .'" (citation omitted)). And without this "indispensable" element, no partnership agreement can exist. *Ardis Health*, 2012 U.S. Dist. LEXIS 154839, at *15 (quoting *Steinbeck*, 151 N.E.2d at 178); *see also Grasso*, 2022 U.S. App. LEXIS 6331, at *3. Accordingly, the FAC fails to state a breach of contract claim arising out of a partnership agreement between Vogel, Naji, and El-Nahhas.

Moreover, the FAC alternately describes the relationship between Naji, El-Nahhas, and Vogel as a "partnership" and a "joint venture," conflating the two terms (*see* FAC ¶¶ 100–14), but Vogel's claims fare no better as a joint venture than as a partnership. "[A] joint venture is in a sense a partnership for a limited purpose, and it has long been recognized that the legal consequences of a joint venture are equivalent to those of a partnership." *Jobanputra v. Kim*, No. 21-cv-7071 (ER), 2022 U.S. Dist. LEXIS 176586, at *10 (S.D.N.Y. Sep. 28, 2022) (citation omitted) (alteration in original). Crucially for the instant purposes, as with a partnership, it is likewise "indispensable" for a joint venture that there exists a provision for the sharing of both profits and losses. *Id.* at *10–11, 14–15. Without an agreement to share losses, no joint venture can exist, even if the parties agreed to share profits. *Turner v. Temptu Inc.*, No. 11-cv-4144 (JMF), 2013 U.S. Dist. LEXIS 114298, at *16–17 (S.D.N.Y. Aug. 13, 2013) (collecting cases); *see also Artco, Inc. v. Kidde, Inc.*, No. 88-cv- 5734 (MJL), 1993 WL 962596, at *10 (S.D.N.Y. Dec. 28, 1993) (If "simply expending efforts to set up a venture were sufficient to satisfy the essential element of sharing of losses, the requirement could nearly always be

satisfied."). Accordingly, Vogel's claim still fails even if construed as a breach of a joint venture, rather than partnership, agreement. *See id.*

Finally, because Vogel has failed to plead the existence of a partnership or joint venture agreement, there is no contract in which to imply a covenant of good faith and fair dealing, and his claim for breach of such implied covenant must also be dismissed. *See Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) ("Because the duties imposed by the implied covenant of good faith and fair dealing arise as a result of the formation of a contractual relationship between the parties, a claim for breach of the implied covenant of good faith and fair dealing must be dismissed when there is no valid and enforceable contract between the parties." (citation omitted)).

### 2. *Breach of Fiduciary Duty & Aiding and Abetting Breach of Fiduciary Duty (Counts 3 and 9)*

Vogel's claims that Naji and El-Nahhas breached their fiduciary duties—and that Wrapbook, Javid, and Woodward aided and abetted such breach—are also predicated on the existence of a partnership or joint venture giving rise to a fiduciary duty. FAC ¶¶ 116, 157–160. Because Vogel has failed to plead a partnership or joint venture, these claims too must be dismissed. *See Orderline Wholesale Distributors, Inc. v. Gibbons, Green, Van Amerongen, Ltd.*, 675 F. Supp. 122, 128 (S.D.N.Y. 1987) ("Since . . . plaintiffs fail to make a showing sufficient to establish the existence of an enforceable joint venture or partnership agreement with [defendant], they also fail to make a showing sufficient to establish the existence of a fiduciary obligation to them by [defendant]—an element essential to [their breach of fiduciary duty claim]."); *King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 315 (S.D.N.Y. 2012) ("[T]here can be no aiding and abetting claim without the existence of a violation by a primary (as opposed to aiding and abetting) party. Thus, because I dismissed plaintiffs' breach of fiduciary duty claims, plaintiffs' aiding and abetting breach of fiduciary duty claims are likewise dismissed.").

3. *Usurpation of Joint Venture Opportunity (Count 10)*

Moreover, without the existence of a joint venture and resulting fiduciary obligations, Vogel's claim for usurpation of a joint venture opportunity must also fail. To plead a claim for usurpation of a corporate or joint venture opportunity, a plaintiff must allege that (1) defendants were plaintiff's fiduciaries, and (2) defendants "divert[ed] and exploit[ed] for their own benefit any opportunity that should be deemed an asset of the corporation" or joint venture. *Altman Stage Lighting, Inc. v. Smith*, No. 20-cv- 2575 (NSR), 2022 WL 374590, at *8 (S.D.N.Y. Feb. 8, 2022) (alteration in original) (citation omitted). Because Vogel has not pled sufficient facts to show that there existed a partnership or joint venture, nor consequently that a fiduciary relationship existed between Vogel and Defendants, Vogel's usurpation claim is dismissed.

4. *Promissory Estoppel (Count 8)*

In the alternative to a claim for breach of the partnership agreement, Vogel asserts a quasi-contractual claim for promissory estoppel. FAC ¶¶ 149–55. Specifically, he alleges that he divulged his business concept for Tradekraft in reasonable and foreseeable reliance, to his detriment, "upon Naji and El-Nahhas committing to the Tradekraft joint venture," but Naji and El-Nahhas' bad faith conduct "unconscionably deprived [Vogel] of his interest in Wrapbook[] and the attendant business opportunities and profits." *Id.* ¶¶ 150, 153   Defendants move to dismiss the claim on the basis that the alleged promise is too vague and indefinite, and promissory estoppel damages are limited to out-of-pocket expenses, but Vogel alleges no such expenses. Doc. 36 at 30.

To plead a claim of promissory estoppel, a plaintiff must allege: "(1) 'a clear and unambiguous promise;' (2) 'a reasonable and foreseeable reliance by the party to whom the promise is made;' and (3) 'an injury sustained by the party asserting the estoppel by reason of his reliance.'" *Diedhiou v. Republic of Sen.*, 2021 U.S. Dist. LEXIS 187114, at *15 (S.D.N.Y. Sep. 29, 2021) (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989)). As to the first element, the only promise Vogel alleges is that

13

of "Naji and El-Nahhas committing to the Tradekraft joint venture." FAC ¶ 150.  But that is the precise kind of "promise that is too vague or too indefinite [to be] actionable under a theory of promissory estoppel." *Cambridge Capital LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 458 (S.D.N.Y. 2021) (citation omitted); *see also Barker v. Bancorp, Inc.*, Nos. 21-cv-869, 21-cv-896, 21-cv-897 (KPF), 2022 U.S. Dist. LEXIS 34095, at *38–39 (S.D.N.Y. Feb. 25, 2022) (collecting cases); *Board of Trs. v. BNY Mellon, N.A.*, No. 11-cv-6345 (RJS), 2012 U.S. Dist. LEXIS 132724, at *19 (S.D.N.Y. Sep. 10, 2012) (same).  Vogel's claim also fails for the independent reason that the alleged damages relate to Vogel's "interest in Wrapbook[] and the attendant business opportunities and profits." FAC ¶ 153.  But the damages recoverable under promissory estoppel are "'reliance damages,' namely, the actual expenditure made in preparation for performance or in performing the work which has been induced by the defendant-promisor." *Cyberchron Corp. v. Calldata Systems Development, Inc.*, 47 F.3d 39, 46 (2d Cir. 1995); *see also Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 341 (S.D.N.Y. 2008) ("[I]n the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone business opportunities or damage to business reputation." (citation omitted)).  Accordingly, Vogel's promissory estoppel claim is also dismissed.

5. *Misappropriation of Trade Secrets, Misappropriation of a Business Idea, and Unfair Competition (Counts 1, 4, and 7)*

Defendants argue Vogel's claims for misappropriation of trade secrets, misappropriation of a business idea, and unfair competition must also all be dismissed because Vogel has not pled sufficient facts to show the requisite relationship between him and Defendants.  Doc. 36 at 18–21.

To plead a claim for misappropriation of a business idea, a plaintiff must allege that (1) there exists between the parties a fiduciary, contractual, or quasi-contractual relationship, and (2) the idea is "novel and concrete," such that the "plaintiff had an

14

enforceable property right in the idea [he] disclosed to [the] defendant[s]." *Shih*, 2020 U.S. Dist. LEXIS 174466, at *38–39 (citations omitted). Similarly, to plead a claim for misappropriation of a trade secret, a plaintiff must allege: "(1) that [he] possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Jinno Int'l Co. v. Premier Fabrics, Inc.*, No. 12-cv-07820 (LGS), 2013 WL 4780049, at *4 (S.D.N.Y. May 24, 2013) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir.1999)); *see also Kraus USA, Inc. v. Magarik*, No. 17-cv-6541 (ER), 2020 U.S. Dist. LEXIS 83481, at *14 (S.D.N.Y. May 12, 2020) ("The elements for stating a claim of misappropriation of trade secrets under New York law 'are fundamentally the same' as those sustaining a claim under the [federal Defend Trade Secrets Act]." (citation omitted)). And, to plead a claim for unfair competition, a plaintiff must allege "that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (citation omitted).

Vogel predicates each of these three claims on the existence of a joint venture or partnership between him, Naji, and El-Nahhas. *See* FAC ¶ 97–99, 121–30, 145–48. In the alternative, Vogel argues that he, Naji, and El-Nahhas had a confidential relationship based on an independent confidentiality agreement. Doc. 40 at 18–20. The Court has already held that Vogel has failed to plead that a joint venture or partnership agreement existed between the three, nor a quasi-contractual relationship. And besides stating that Vogel explained his ideas to Naji and El-Nahhas "in confidence," and the Tradekraft documents were kept in a password protected Google account and not disseminated outside "those with a need to know," Vogel makes no factual allegations as to the existence of a confidentiality agreement. *See* FAC ¶¶ 6, 48, 62, 125. Vogel does not allege any confidentiality agreement was ever signed, nor does he specify the actual terms

15

of an oral or implied confidentiality agreement. Such conclusory allegations are insufficient to plead the existence of a confidential relationship. *See Cambridge Capital LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 471–72 (S.D.N.Y. 2021) (holding that a complaint failed to plead a confidentiality agreement existed where the complaint did not "describe the type of information that would be considered by the parties to be confidential," nor "what obligations were imposed by the supposed confidentiality agreement, including what measures the parties were required to take to keep confidentiality and whether those obligations were reciprocal"). Thus, Vogel has failed to allege that there existed no fiduciary, contractual, quasi-contractual, or confidential relationship to sustain a claim for misappropriation of a business idea or trade secret nor unfair competition. *See Telecom Int'l Am., Ltd.*, 280 F.3d at 197; *Shih*, 2020 U.S. Dist. LEXIS 174466, at *38–39; *Jinno Int'l Co.*, 2013 WL 4780049, at *4. Consequently, each claim must be dismissed.[3]

### 6. *Unjust Enrichment (Count 6)*

Finally, Defendants argue that Vogel's unjust enrichment claim should be dismissed as duplicative of the trade secret count because it too is predicated on Vogel's novel ideas and work product with respect to Tradekraft. Doc. 36 at 28–29. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted). Defendants do not argue that Vogel failed to plead any of the elements of unjust enrichment; rather, their

---

[3] Defendants also argue that these three claims should be dismissed on the independent basis that Vogel's ideas were unspecific and unoriginal and thus not protected business ideas or trade secrets. Doc. 36 at 21–28. Vogel responds that he need not specify the trade secrets at issue; but he nonetheless specifies that the ideas and secrets at issue "include, for example, users having a portable payroll profile as part of an onboarding process, and managing every aspect of the production process, and insurance features." Doc. 40 at 22–23. The Court need not reach Defendants' arguments as to the specificity and originality of Vogel's ideas because it has already held that Counts 1, 4, and 7 fail for want of a predicate relationship.

16

sole argument is that the claim is duplicative. Doc. 36 at 28–29. Such argument is unavailing. First, it is permissible to plead an unjust enrichment claim in the alternative even if a party cannot simultaneously recover upon it and another claim for the same injury. *See Shih*, 2020 U.S. Dist. LEXIS 174466, at *44 (citing *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012)). Second, as the remainder of Vogel's claims have been dismissed and unjust enrichment is his sole mechanism for remedy, there are no claims to duplicate. Accordingly, Defendants' motion is denied with respect to Vogel's unjust enrichment claim.

### C. Vogel is Granted Leave to Amend

The Court will, however, grant Vogel leave to amend the FAC. Courts are instructed to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (citation omitted); *see also Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-cv10104 (ER), 2023 U.S. Dist. LEXIS 54340, at *10 (S.D.N.Y. Mar. 29, 2023) ("The party opposing the motion to amend bears the burden of proving the claim's futility."). This is a permissive standard since the Federal Rules "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits" of the case. *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Moreover, the Second Circuit has counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015)).

Because this is the Court's first opportunity to highlight the precise defects of Vogel's pleading, and it is not yet apparent that another opportunity to amend would be futile, the Court will permit him to replead the dismissed claims.

17

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' request for oral argument is also DENIED as moot. The Clerk of Court is respectfully directed to terminate the motions, Docs. 33, 34, and 42.

If Vogel wishes to file an amended complaint, he must do so by August 30, 2023. Further, the parties are directed to appear for a telephonic conference on August 31, 2023 at 10:30 AM. The parties are directed to call (877) 411-9748 at that time and enter access code 3029857#.

It is SO ORDERED.

Dated:   August 16, 2023
         New York, New York

                                                        _____
                                                        EDGARDO RAMOS, U.S.D.J.