UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL SCOTT VOGEL individually and on behalf of the Tradekraft Partnership,

            Plaintiff,

-against-

TAKEONE NETWORK CORP. d/b/a WRAPBOOK, PATRICK ALI JAVID, NAYSAWN NAJI, HESHAM EL-NAHHAS, and CAMERON WOODWARD, individually, and in their capacity as Co-Founders of WRAPBOOK,

            Defendants.

22-cv-3991 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

    Plaintiff Michael Scott Vogel brought this action against Defendants TakeOne Network Corp. d/b/a Wrapbook, and its founders Patrick Ali Javid, Naysawn Naji, Hesham El-Nahhas, and Cameron Woodward. Defendants move to dismiss Vogel's Second Amended Complaint (SAC). For the following reasons, Defendants' motion is denied in part and granted in part.

## BACKGROUND

    According to the operative complaint, Vogel (who has experience in television, film, and media production) and Naji (a programmer) met on a professional networking platform in March 2017. SAC ¶¶ 28, 34, Dkt. 62. The two met in person in April 2017. ¶ 35. Vogel told Naji that he had a business idea he wanted to discuss if Naji agreed to keep it confidential. ¶ 37. Naji agreed and Vogel shared his idea for Tradekraft, a software that would manage hiring, payroll, budgeting, and expenses in the television and film industries. ¶¶ 37–38.

    In June 2017, Naji officially accepted Vogel's offer to work together on Tradekraft. ¶ 48. They agreed to form a partnership, serve as cofounders of the business, and work together to build a prototype and business strategy. *Id.* Vogel claims that they "explicitly agreed that they would share everything relating to Tradekraft on an equal, 50/50 basis," including their interest in the products, any profits, and any expenses. ¶ 49.

    At around the same time, Naji mentioned that El-Nahhas (Naji's friend and a fellow programmer) could be of assistance in developing Tradekraft. ¶ 47. Vogel agreed that El-Nahhas could be included in discussions about Tradekraft. *Id.* A month or two later, Vogel, Naji, and El-Nahhas discussed retaining programming assistance for $21,000 (although they never did) and agreed they would split the cost equally. ¶¶ 56, 58. The three also agreed that El-Nahhas would join Vogel's and Naji's partnership and that they would all "work together as equal partners" under

"the same terms that had been agreed to by Vogel and Naji." ¶ 57. Vogel, Naji, and El-Nahhas shared information about the company in a document Naji entitled "Partner Agreement." ¶ 59.

While working together, Vogel, Naji, and El-Nahhas "took reasonable steps to safeguard the confidentiality" of their code, business ideas, and communications by using password-protected platforms to store the information. ¶ 64. At least one draft of their pitch deck noted that the document was confidential. ¶ 65. Vogel also asked a potential advisor to sign a non-disclosure agreement in 2017 and had a potential investor orally agree to keep information about Tradekraft confidential in 2018. ¶ 66.

Things went south in late 2017. In December, Naji and El-Nahhas altered the Tradekraft pitch deck to make Vogel an advisor rather than a co-founder. ¶ 71. That same month, Naji refused to provide Vogel access to the Tradekraft code. ¶ 72. During a call on January 17, 2018, which Vogel recorded, Naji told Vogel he intended to "dissolve" the "loosely defined partnership." ¶ 75. Vogel said that they "didn't have a partnership," just "very loose terms." ¶ 77. (The parties have dueling interpretations of the back-and-forth on the call.) After the call, Naji sent an email titled "Tradekraft Partnership Dissolution" to Vogel and El-Nahhas that proposed terms for dissolving the partnership. ¶ 83. Vogel replied requesting an accounting of the expenses and access to the source code and the existing platform. ¶ 89. Vogel refused to sign an agreement that would allow Naji and El-Nahhas a release for all the "assets of the partnership," and Naji and El-Nahhas refused to hand over the source code.  ¶¶ 91–92.

Naji, El-Nahhas, Woodward, and Javid founded Wrapbook in 2018. ¶ 98. Vogel claims that Naji and El-Nahhas started to work on the company with Javid as early as December 2017. ¶ 97. Vogel also claims that Wrapbook used the Tradekraft source code. ¶ 99.

Vogel sued Wrapbook and the company's founders—Naji, El-Nahhas, Woodward, and Javid—on May 17, 2022. Dkt. 3. After Defendants moved to dismiss, Vogel filed his first amended complaint. Vogel's first amended complaint brought claims against all Defendants for misappropriation of Vogel's and Tradekraft's trade secrets, breach of contract, misappropriation of a business idea, unjust enrichment, unfair competition, and usurpation of a joint venture opportunity. Dkt. 31 ¶¶ 97–114, 121–130, 139–148, 165–166. The first amended complaint also brought claims against Naji and El-Nahhas for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and promissory estoppel, and for aiding and abetting a breach of a fiduciary duty against Javid, Woodward, and Wrapbook. *Id.* ¶¶ 115 –120, 131–138, 149–164.

On August 17, 2023, the Court (Ramos, J.) dismissed Vogel's first amended complaint save for the claim for unjust enrichment. *See Vogel v. TakeOne Network Corp.*, 2023 WL 5276857, at *1 (S.D.N.Y. Aug. 16, 2023). The Court held that the complaint lacked sufficient allegations of the existence of a partnership or joint-venture agreement, which was fatal to all claims except for unjust enrichment. *Id.* at *5. The Court granted Vogel leave to amend his complaint. *Id*. at *9.

Shortly after the case was reassigned to me, Vogel filed the SAC. The SAC brings claims for "breach of partnership or contract" and breach of the implied covenant of good faith and fair

2

dealing against Naji, El-Nahhas, and Wrapbook (Counts 1-2, 5), claims for an accounting, breach of fiduciary duty, and misappropriation of a business idea against Naji, El-Nahhas, and Wrapbook on behalf of Vogel individually and on behalf of the Tradekraft partnership (Count 3-4, 8), and claims for federal and state trade secret misappropriation, unjust enrichment, and unfair competition against all Defendants, again on behalf of Vogel and Tradekraft (Counts 6-7, 9-10). Finally, Vogel brings a claim for aiding and abetting a breach of fiduciary duty against Wrapbook, Javid, and Woodward on his behalf and for Tradekraft (Count 11). SAC ¶¶ 113–193. Defendants again move to dismiss. Dkt. 67.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In deciding a motion to dismiss, well-pleaded factual allegations are accepted as true, and all reasonable inferences are drawn in the non-movant's favor. *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022). While detailed factual allegations are not necessary, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

### I. Partnership related claims (Counts 1, 2, 4, and 5)

Vogel brings a claim against Naji, El-Nahhas, and Wrapbook for breach of the partnership agreement between Vogel, Naji, and El-Nahhas. SAC ¶¶ 113–122. And he brings a claim in the alternative against just Naji and Wrapbook for breach of Vogel's prior agreement with Naji. ¶¶ 123–129. Vogel also brings claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing against Naji, El-Nahhas, and Wrapbook based on the alleged partnership agreements. ¶¶ 134–146.

Defendants say these claims should be dismissed because the complaint does not adequately allege a partnership. The Court disagrees. The complaint states that Vogel and Naji formed a partnership in June 2017, when they agreed to "share equal decision-making authority regarding Tradekraft," to "share equal interests" in "Tradekraft work product … as well as profits," to "share the expenses incurred in pursuing the partnership," and to share "losses and liabilities." ¶ 49. Vogel also alleges that sometime in the next two months, he, El-Nahhas, and Naji agreed to "work together as equal partners with respect to everything relating to Tradekraft," adopting "the same terms that had been agreed to by Vogel and Naji." ¶ 57. Vogel has therefore pled the essential elements of a partnership between him, Naji, and El-Nahhas or in the alternative between just him and Naji. *See Ardis Health, LLC v. Nankivell*, 2012 WL 5290326, at *5 (S.D.N.Y. Oct. 23, 2012).

Defendants argue that the Court should dismiss these claims because Vogel admitted that they "didn't have a partnership" during the January 2018 call, a transcript of which is attached to the complaint. Dkt. 68 at 6–7. But the Court puts little weight on whether Vogel referred to the agreement as a partnership or something else. *See Bailey v. Broder*, 1998 WL 13827, at *1

(S.D.N.Y. Jan. 15, 1998) ("While the existence of a partnership ultimately depends upon the individuals' intent, the name they give their agreement is not dispositive."). Plus, as Vogel points out, Naji refers to the agreement as a partnership at various points on the call. SAC ¶¶ 75, 76, 83.

Defendants also say that Vogel has not pled an agreement to share losses and liabilities. Dkt. 68 at 7–8. But the complaint specifically states that Vogel and Naji agreed to share "losses and liabilities," SAC ¶ 49, and that when El-Nahhas joined the partnership he agreed to "the same terms that had been agreed to by Vogel and Naji," ¶ 57. As one example of this agreement, Vogel alleges that they agreed to "share expenses incurred in their work together, including fees associated with the mobile app developers." *Id.*; *see also* ¶¶ 54, 68.

Finally, Defendants argue that the partnership allegations are inconsistent throughout the SAC and that allegations in the SAC contradict allegations in the first amended complaint. Defendants claim that these contradictions warrant disregarding the amended allegations. Dkt. 68 at 9–10. The Court disagrees. First, allegations in the SAC that the parties agreed to be equal partners can be squared with allegations that they later discussed the possibility of changing the equity arrangement. SAC ¶¶ 48, 57, 67. And while there are differences between the first and second amended complaint, any inconsistency is not so great as to "trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true." *Goldrich v. Masco Corp.*, 2023 WL 2649049, at *3 (S.D.N.Y. Mar. 27, 2023). Instead, the inconsistencies that Defendants identify are relatively slight. For example, allegations in the first amended complaint that Vogel, Naji, and El-Nahhas entered into a partnership in May 2017, but did not agree on how to share equity at that time, *see* Dkt. 31 ¶¶ 53–55, are reconcilable with the SAC's allegation that Vogel, Naji, and El-Nahhas later came to an agreement at some point before August 2017. SAC ¶ 57.[1]

Defendants also argue that Vogel has not adequately alleged a confidentiality agreement. Dkt. 68 at 10–12. The Court does not reach this argument because Vogel has sufficiently alleged a partnership agreement existed between him, Naji, and El-Nahhas, or in the alternative that a partnership existed between him and Naji. Of course, the factual contours of the parties' alleged arrangements—including any confidentiality and partnership obligations—will be the subject of discovery. The Court understands Defendants will vigorously try to prove that no enforceable agreements were ever made. For present purposes, the Court solely holds that Vogel has satisfied his obligation to plead a partnership agreement with respect to Naji and El-Nahhas. Defendants raise no other reasons that counts 1, 2, 4, or 5 should be dismissed as to Naji and El-Nahhas, and so Defendants' motion to dismiss those claims is denied with respect to these parties.

But the Court will dismiss counts 1, 2, 4, and 5 with respect to Wrapbook. Vogel does not allege that Wrapbook was somehow a party to any partnership agreement. Instead, he claims that "Wrapbook bound itself to Naji's agreements with Vogel and Naji by knowingly accepting the benefits of those agreements—namely, the Vogel Proprietary Information and Tradekraft

---

[1] Defendants also point to the allegation in the first amended complaint that there was no "agreement on the amount and source of El-Nahhas's equity compensation." Dkt. 31 ¶ 78. But there is no date associated with this allegation and later in the complaint Vogel says that they agreed to a "three-way equal … split of the partnership's equity." ¶ 105.

Proprietary Information." SAC ¶¶ 119, 126, 138. Vogel also says that Wrapbook is "vicariously liable for the breaches of Naji and El-Nahhas." ¶ 119, 126, 138, 143.

Yet the complaint provides no factual allegations supporting these claims. Vogel does not explain how Wrapbook became bound to a partnership agreement that was created before Wrapbook was formed. (In fact, many of the alleged breaches also occurred before Wrapbook was formed.) As described in section VII, Wrapbook may have played some role in aiding Naji and El-Nahhas in breaching their agreement. But the SAC provides no explanation for how Wrapbook *itself* breached the partnership agreements. In addition, Vogel does not plead any facts necessary to support a determination that Wrapbook can be held vicariously liable for the actions of its co-founders. So counts 1, 2, 4, and 5 are dismissed as to Wrapbook.

## II. Accounting claim (Count 3)

Vogel brings a claim for an accounting against Naji, El-Nahhas, and Wrapbook for "a complete accounting of all partnership assets, including the profits and other benefits resulting from their wrongful misappropriation of the Vogel Proprietary Information and the Tradekraft Proprietary Information." SAC ¶ 133. "A party seeking an accounting must first establish four conditions: (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 515 (S.D.N.Y. 2012).

Here, Vogel has not established that there is no adequate legal remedy. In fact, Vogel brings legal claims covering the same subject matter as his claim for an accounting. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) (dismissing accounting claim that "falls within the scope of the breach of contract claim" because "an equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter"); *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 56 (2d Cir. 2009) ("An accounting claim is not proper where money damages are recoverable under alternative causes of action for the same injury."); *Addax BV Geneva Branch v. E. of New Jersey, Inc.*, 2007 WL 1321027, at *2 (S.D.N.Y. May 4, 2007).

Vogel argues that he has "an absolute right to an accounting notwithstanding the existence of an adequate remedy at law." Dkt. 72 at 21 (quoting *Zohar v. LaRock*, 185 A.D.3d 987, 991 (2d Dep't 2020)). But this absolute right is limited to cases in which there is an existing "fiduciary relationship between the parties." *Zohar*, 185 A.D.3d at 991. And while Vogel alleges that the parties once had a partnership, he does not contest that the partnership was dissolved. So Vogel's claim for an accounting is dismissed.[2]

---

[2] Vogel may have been permitted to seek an accounting of profits as of the date of the partnership's dissolution. *See Zohar*, 185 A.D.3d at 991. But he requests an accounting that post-dates the dissolution and includes "profits and other benefits resulting from their wrongful misappropriation of the Vogel Proprietary Information and the Tradekraft Proprietary Information." SAC ¶ 133. In other words, his accounting claim is for the present value of the dissolved Tradekraft partnership.

### III.  Trade secret claims (Counts 6 and 7)

Vogel brings claims for trade secret misappropriation under both the Defend Trade Secret Act (DTSA) and New York law. SAC ¶¶ 147–167. Vogel identifies two categories of trade secrets: "Vogel Proprietary Information," which he defines as "system, designs, business ideas, and contacts"; and "Tradekraft Proprietary Information," which includes "marketing material, business plans, and the Tradekraft source code." ¶¶ 33, 63.

"To state a claim for misappropriation under the DTSA, a plaintiff must allege that it possessed a trade secret that the defendant misappropriated." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (citing 18 U.S.C. § 1836(b)(1)). Similarly, to state a claim for trade secret misappropriation under New York law, "a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016).

Vogel has met these requirements. First, and as further explained below, Vogel has identified potential trade secrets. And he has alleged that the partnership took "reasonable measures to keep such information secret," 18 U.S.C. § 1839(3)(A), by using passwords to protect the various accounts where the information was stored, SAC ¶ 64. Vogel has also alleged that he, Naji, and El-Nahhas had a partnership under which they agreed to maintain the confidentiality of the alleged trade secrets. *See, e.g.*, ¶¶ 4, 7, 37, 47, 97. And Vogel further claims that Naji and El-Nahhas eventually disclosed the trade secrets without Vogel's permission, in a manner that violated the partnership's confidentiality agreement. ¶¶ 98–99, 153–155; *see also Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 676 (S.D.N.Y. 2022) (finding that the plaintiff-company adequately alleged misappropriation when the defendants used the company's trade secrets in violation of their contractual agreements).

Defendants say that Vogel's claims nevertheless fail because Vogel has not adequately described the trade secrets. Dkt. 68 at 14–15. "To survive a motion to dismiss, a party has no obligation to reveal those secrets in the complaint simply to prove that they exist," but "must put forth specific allegations as to the information owned, such that the opposing party is given fair notice of the claim." *Ad Lightning Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at *2 (S.D.N.Y. Aug. 7, 2020) (cleaned up). "[C]ourts have 'accepted relatively general descriptions of alleged secrets at the motion to dismiss stage.'" *Id.* (collecting cases) (quoting *Island Intellectual Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 2020 WL 2793000, at *7 (S.D.N.Y. May 29, 2020)). Vogel has adequately identified the "Tradekraft Proprietary Information," as the marketing material, business plans, and source code. SAC ¶ 63. Vogel has also adequately described the Vogel Proprietary information as his industry contacts and his general idea for creating a payroll platform that used supply chain system dashboards and portable profiles. Whether or not Vogel will be able to prove that these alleged trade secrets were real, protectable, and were misappropriated by any of Defendants is for discovery. But Defendants have notice of what they are facing in this case.

Defendants next argue that Vogel's general business idea cannot constitute a trade secret. As Vogel concedes, under New York law a "product idea, plan, or design that will be evident to the public once marketed cannot meet" the trade secret standard. Dkt. 72 at 13; *see also My Mavens, LLC v. Grubhub, Inc.*, 2023 WL 5237519, at *19 (S.D.N.Y. Aug. 14, 2023) ("[T]he Second Circuit has stated that the case law militates strongly in favor of the conclusion that a new product idea that will be open and visible once brought to market cannot, as a matter of law, constitute a trade secret."); *Detsis v. Victoria's Secret Stores, Inc.*, 2006 WL 2819586, at *6 (S.D.N.Y. Sept. 29, 2006) ("The design concepts that Detsis contends were misappropriated by Victoria's Secret are readily apparent from the finished product, that once marketed, become visible to all competitors to copy. Therefore, the designs cannot be protected by trade secret law."); *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 259 (E.D.N.Y. 2015). So Vogel's idea for Tradekraft is not protected as a trade secret under New York law, but the remainder of the alleged trade secrets (*e.g.*, the source code, business contacts, etc.) are still potentially protected.

Vogel argues that the DTSA also protects his business idea. The DTSA defines as trade secret information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(B). This definition suggests that a new, confidential product idea can be a trade secret if it has potential economic value from not being disclosed. *See Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 962–63 (C.D. Cal. 2011) (concluding that it was a question for the jury whether a new doll concept derived independent economic value from not being generally known). Defendants do not respond to this argument, except to note that the *My Mavens* court dismissed a DTSA claim. Dkt. 73 at 3. But *My Mavens* did not discuss the differences between the DTSA and New York law. So, at this stage, the Court finds that Vogel has adequately alleged that his trade secrets—including his idea for developing Tradekraft—may have independent economic value from not being generally known.

However, there is a separate issue that the Court has identified. A DTSA claim is subject to a three-year limitations period based on when the misappropriation was "discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C.A. § 1836(d). But under New York law, "Plaintiffs' trade-secret-misappropriation claims accrue at the time of defendants' alleged misconduct or upon the disclosure of the trade secret, not when plaintiffs discover the misappropriation." *Zirvi v. Flatley*, 838 F. App'x 582, 586 (2d Cir. 2020). Vogel alleges that the misappropriation occurred in 2018. Dkt. 62 ¶ 98. So the limitations period would have expired by the end of 2021. Since this case was not filed until May 2022, the limitations period on Vogel's New York misappropriation claim seems to have run. The SAC also raises the question of whether Vogel should have discovered (or did discover) the alleged misappropriation more than three years before his case was filed, when Wrapbook launched in 2018.

7

Within 14 days of this decision, Vogel should determine whether he has a good-faith basis to pursue the federal and New York trade secret claims. Vogel must inform Defendants and the Court whether he will proceed with those claims or withdraw them.

### IV.     Common law misappropriation (Count 8)

Vogel also brings a claim for misappropriation of a business idea—namely, the Vogel Proprietary Information and the Tradekraft Proprietary Information. "[T]o state a claim under New York law for misappropriation of an idea," Vogel "must establish that the idea disclosed is novel" and "that a legal relationship existed between the parties." *Zikakis v. Staubach Retail Servs., Inc.*, 2005 WL 2347852, at *3 (S.D.N.Y. Sept. 26, 2005). "Generally, the test for novelty is rather stringent and the idea must show true invention and not a mere adaptation of existing knowledge." *Next Commc'ns, Inc. v. Viber Media, Inc.*, 2016 WL 1275659, at *5 (S.D.N.Y. Mar. 30, 2016) (cleaned up). "On a motion to dismiss, a court may find that an idea is not novel if it is simply a variation on a theme that already existed." *Id.* (internal quotation marks omitted).

For the reasons described above, the Court declines to dismiss this claim based on Defendants' arguments that there was no confidential relationship. Defendants also argue that Vogel fails to allege that the ideas were novel. Defendants invite the Court to review the websites of other payroll service companies to demonstrate that Vogel's idea was just an adaptation of existing products. Dkt. 68 at 18. While Defendants' argument might ultimately prove correct, the Court will not venture outside the record at this stage in the litigation. *Cf. Zikakis*, 2005 WL 2347852, at *3 (dismissing misappropriation of a business idea claim for lack of novelty based on the plaintiff's own allegations that the idea was found in other industries); *Next Commc'ns*, 2016 WL 1275659, at *6 (dismissing misappropriation of a business idea claim for lack of novelty based on publicly filed patent applications).

### V.      Unjust enrichment (Count 9)

Vogel's ninth cause of action is for unjust enrichment. Vogel alleges that, "[i]f no enforceable contract governs this dispute," then Defendants are liable to Vogel for any benefit they received from using the information they wrongfully acquired. SAC ¶ 177. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Defendants say that Vogel's claim for unjust enrichment should be dismissed because Vogel "fails to adequately plead how Defendants benefited from any of Plaintiff's purported ideas," which were "neither novel nor unique." Dkt. 68 at 23. But that just rehashes the arguments addressed above. Vogel plausibly alleges that Defendants improperly acquired and took advantage of valuable and proprietary information that either he or Tradekraft owned. Defendants' argument therefore fails at this stage of the litigation.

### VI.     Unfair competition (Count 10)

Vogel brings a claim for unfair competition based on Defendants' alleged "misappropriat[ion of] the labor, skill, and expenditures of Vogel and the Tradekraft Partnership

8

by taking the Vogel Proprietary Information and Tradekraft Proprietary Information and using it to found, develop, and monetize Wrapbook." SAC ¶ 184.

Defendants argue that dismissal is warranted because Vogel admits that "the Tradekraft prototype did not include the payroll functions that are now the hallmark of Wrapbook's business." Dkt. 68 at 21. But Defendants fail to explain why this would warrant dismissal when Vogel's unfair competition claim is not limited to Defendants' use of the Tradekraft prototype but also includes Defendants' use of the payroll platform idea (which had been sketched out in frames during the partnership, *see* SAC ¶ 70), Vogel's industry contacts, and the Tradekraft marketing material. Defendants might be right as to what the facts in this case ultimately show, but for pleading purposes, Vogel has alleged enough.

Defendants also argue that damages for unfair competition are limited to lost profits from diverted customers and "Plaintiff does not allege Wrapbook has ever diverted a single customer from Tradekraft, (nor could he, as Tradekraft never had customers to divert)." Dkt. 68 at 21. But as Vogel points out, damages can also be awarded based on unjust enrichment or a reasonable royalty model. *See LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 503 (S.D.N.Y. 2002) ("Damages in unfair competition cases are typically determined by plaintiff's lost profits resulting from defendant's improper conduct. … In trade secret misappropriation cases, however, the courts have diverged from a straight lost profits analysis in cases where plaintiff's losses and defendant's actual gain cannot be easily computed.").[3]

### VII. Aiding and Abetting (Count 11)

Defendants next claim that Vogel has failed to state a claim for aiding and abetting a breach of fiduciary duty against Wrapbook, Javid, and Woodward. Dkt. 68 at 21. "[U]nder New York law, the elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *In re Platinum-Beechwood Litig.*, 400 F. Supp. 3d 2, 5 (S.D.N.Y. 2019) (quotation marks omitted). In addition, the plaintiff must "demonstrate that the defendant had 'actual knowledge' of the misconduct at issue." *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 627 (2d Cir. 2020); *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (same). Defendants argue only that Vogel fails to allege that Javid, Woodward, or Wrapbook had actual knowledge of any misconduct. The Court disagrees.

As to Javid and Woodward, Vogel alleges that "upon information and belief, Javid and Woodward knew of the partnership and fiduciary relationship between Vogel, Naji, and El-Nahhas

---

[3] Defendants also argue that the claim should be dismissed because Vogel stated during the January 2018 phone call with Naji that: "It's about compromise and understanding and finding a way through. We're not doing that now, and me moving forward doesn't depend on any code that exists now. I wouldn't do that. It's not my interest. There's not enough there, right? I see it being done differently. You could say I'm crazy, eh?" Dkt. 62-9 at 13. Defendants do not explain why these statements would foreclose an unfair competition claim as a matter of law.

in working together on the Tradekraft venture." SAC ¶ 190. Vogel also alleges that "[u]pon information and belief, Naji and El-Nahhas were talking about founding Wrapbook with Javid and Woodward while they were still actively discussing their partnership with Vogel, and thus Javid and Woodward were aware of Naji and El-Nahhas's fiduciary relationships with Vogel," and that Javid tweeted that he was in "week 2 of starting a start up" in December 2017. ¶¶ 190, 97. Accepting all allegations in the light most favorable to Vogel, the complaint permits an inference that Javid and Woodward had actual knowledge of Naji and El-Nahhas's fiduciary duty to Vogel, but still assisted Naji and El-Nahhas in breaching that duty by starting Wrapbook. If discovery does not substantiate these allegations, Defendants can renew this argument at summary judgment.

As to Wrapbook, Vogel alleges that "[b]ecause Naji and El-Nahhas were co-founders of Wrapbook (and Naji personally incorporated Wrapbook in February 2018), Wrapbook knew of their fiduciary relationship with Vogel." SAC. ¶ 190. The SAC also alleges that Wrapbook may have been founded as early as late 2017, before the partnership was dissolved. ¶ 125. So, at this stage of the case, Vogel has adequately alleged that Wrapbook had actual knowledge of any misconduct.

### VIII. Claims on behalf of Tradekraft

Finally, Defendants argue that claims brought by Tradekraft should be dismissed because Vogel has no authority to bring claims on Tradekraft's behalf. The parties appear to agree that the partnership was dissolved in January 2018. *See* Dkt. 62-9 at 2 (January 2018 phone call transcript attached to the complaint in which Naji and Vogel agree that the partnership was being dissolved). The parties also agree that "[d]issolution terminates a partner's authority to act for the partnership except to the extent necessary to wind up partnership affairs." *Metzger v. Goldstein*, 139 A.D.3d 918, 919 (2d Dep't 2016) (citation omitted); *see also* Dkt. 68 at 24 (citing *Metzger* standard); Dkt. 72 at 23 (same).

Vogel argues that he can bring claims on behalf of Tradekraft because this is an action related to winding up the partnership, namely for a recovery that Vogel claims is owing to Tradekraft based on Defendants' misappropriation of partnership assets. The Court agrees. Vogel's claims on behalf of Tradekraft relate to an attempt to recover partnership assets, so at this stage the Court is persuaded that they can be brought on behalf of Tradekraft. *See Metzger*, 139 A.D.3d at 918–19 (derivative claims for breach of fiduciary duty, unjust enrichment, and accounting brought on behalf of dissolved partnership against a former partner "related to winding up" of partnership); *Yorkes v. Ross*, 142 A.D.2d 642, 642–43 (2d Dep't 1988) (finding plaintiff "within his rights in prosecuting a collection action on behalf of the partnership" because "[a]ny partner who has not wrongfully dissolved the partnership has the right to wind up partnership affairs provided that any partner upon cause shown, may obtain winding up by the court" (cleaned up)). If discovery makes clear that there was no partnership agreement or that the partnership did not have any assets, Defendants can renew their argument that Vogel cannot assert claims on Tradekraft's behalf.

10

## CONCLUSION

Defendants' motion to dismiss is granted with respect to Vogel's claims for an accounting and Vogel's New York trade secret claims predicated on his product idea. Defendants' motion to dismiss is also granted with respect to Vogel's claims against Wrapbook for breach of a partnership agreement, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. Defendants' motion is denied in all other respects.

The Clerk of Court is directed to terminate Dkt. 67.

SO ORDERED.

Dated: February 29, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge